**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ANTHONY ZAPPIN,

      **Plaintiff,**                                **2:22-CV-00292**

      vs.

CAREY DOUGLAS KESSLER & RUBY,
PLLC, S. BENJAMIN BRYANT,

      **Defendants.**

## ORDER

Pending before the Court are the Defendants' ***Motion to Dismiss and for a Pre-Filing Injunction*** and its accompanying ***Memorandum of Law in Support of the Motion to Dismiss and for a Pre-Filing Injunction*** (ECF Nos. 11, 12), as well as the Defendants' ***Motion to Dismiss Plaintiff's Amended Complaint and for a Pre-Filing Injunction*** and its accompanying ***Memorandum of Law in Support of the Motion to Dismiss Plaintiff's Amended Complaint and for a Pre-Filing Injunction*** (ECF Nos. 17, 18), filed on November 29, 2022 and December 29, 2022, respectively. By Administrative Order entered on July 20, 2022, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 5) Having examined the ***Amended Complaint*** (ECF No. 16), the additional pleadings of record and pertinent legal authority, the undersigned has concluded that the ***Motions to Dismiss and for a Pre-Filing Injunction*** should be **GRANTED** for the reasons stated *infra*:

### Plaintiff's Factual Allegations

The Plaintiff has filed a lengthy Complaint against these Defendants, however, the bulk of which outlines his initial troubles during his New York divorce and child custody proceedings,

which later became the basis for the New York disciplinary proceedings resulting in the loss of the Plaintiff's New York law license, which lead to the reciprocal disciplinary proceedings before the West Virginia Supreme Court of Appeals resulting in the loss of the Plaintiff's West Virginia law license. (ECF No. 16 at 2-35)[1] In this civil action, the Plaintiff alleges that the Defendants were negligent and committed numerous acts of malpractice in representing him in the reciprocal disciplinary proceedings in West Virginia, asserting that the Defendants failed to hold Rachael Cipoletti accountable for violations of Rule 3.8 of the Rules of Professional Conduct to the extent that she did not refute that the New York disbarment had no evidentiary support, but instead, she proceeded to prosecute the disbarment proceedings against the Plaintiff; that had the Defendants raised the Rule violations issues, in all likelihood, the reciprocal disciplinary proceedings would have been dismissed or withdrawn. (Id. at 35-57, ¶¶ 46-53) The Plaintiff also alleges that the Defendants failed to hold Ms. Cipoletti accountable for violations of Rule 3.3 of the Rules of Professional Conduct to the extent that she lied about the Plaintiff receiving a hearing on the merits before the New York disciplinary proceeding and that had the Defendants raised this Rule violation issue, in all likelihood, the reciprocal disciplinary proceedings would have been dismissed or withdrawn. (Id. at 37-38, ¶¶ 54-57) The Plaintiff further alleges that the Defendants also failed to hold Ms. Cipoletti accountable when she brought "new uncharged, unlitigated and false allegations against Plaintiff in the reciprocal disciplinary proceeding" upon which the Hearing Panel

---

[1] It is noted that the Plaintiff also alleges numerous acts of misconduct against other parties that are not listed as defendants in this particular lawsuit, but concern other lawsuits the Plaintiff previously filed with this Court. See, e.g., *Anthony Zappin v. Ancil G. Ramey, Steptoe & Johnson PLLC, Kevin M. Doyle, Jorge Dopico, Rachael Fletcher Cipoletti*, No. 3:22-cv-00080, 2023 WL 1469995 (Feb. 2, 2023)(Chambers, J.); *Anthony Zappin v. J. Richard Supple, Jr., Hinshaw & Culbertson LLP*, No. 3:20-cv-00210 (Aug. 24, 2020)(Chambers, J.); *Anthony Zappin v. Sarah Jo Hamilton, Deborah Scalise, Scalise & Hamilton LLP, Scalise & Hamilton P.C.*, No. 3:20-cv-00209 (Feb. 5, 2021)(Chambers, J.); *Anthony Zappin v. Rachael L. Fletcher Cipoletti, Justice Evan Jenkins, Justice Beth Walker, Justice Bill Wooton, Justice Tim Armstead, Justice John Hutchinson, Edythe Gaiser, Anne Lambright, Gail Henderson Staples*, No. 2:21-cv-00119, 2021 WL 5989067 (S.D.W. Va. Sept. 24, 2021)(Berger, J.), *reconsideration denied,* 2021 WL 5989067 (S.D.W. Va. Dec. 17, 2021), *aff'd*, No. 22-1065, 2022 WL 2914729 (4th Cir. Jul. 25, 2022).

Subcommittee Majority and later the West Virginia Supreme Court of Appeals relied heavily when imposing reciprocal discipline against the Plaintiff, resulting in his disbarment; had the Defendants challenged these falsehoods, in all likelihood the reciprocal disciplinary proceeding would have been dismissed or withdrawn. (Id. at 39-40, ¶¶ 58-61) The Plaintiff alleges that the Defendants were also negligent in the reciprocal disciplinary proceedings by failing to file a motion to compel discovery against Ms. Cipoletti, which would have revealed that she possessed exculpatory evidence, including communications from counsel for the New York Attorney Grievance Committee, Jorge Dopico and Kevin Doyle and their West Virginia counsel, Ancil Ramey, were exerting pressure on Ms. Cipoletti to pursue the reciprocal disciplinary proceedings against the Plaintiff; had the Defendants moved to compel the production of this information, the reciprocal disciplinary proceedings against the Plaintiff would have been dismissed or withdrawn. (Id. at 40-41, ¶¶ 62-64) The Plaintiff alleges that the Defendants were negligent by failing to challenge the constitutionality and appropriateness of imposing reciprocal discipline on the Plaintiff before the West Virginia Supreme Court of Appeals instead of the Hearing Panel Subcommittee, as West Virginia did not have a collateral estoppel procedure to discipline attorneys – an issue that the West Virginia Office of Disciplinary Counsel had observed in a prior case and the West Virginia Supreme Court of Appeals recently held – had the Defendants raised this argument, the outcome of the reciprocal disciplinary proceedings against the Plaintiff would have been in his favor. (Id. at 41-42, ¶¶ 65-67)

The Plaintiff asserts a single count as to these Defendants based on state law: negligence/legal malpractice. (Id. at 42) The Plaintiff alleges that the Defendants owed him a duty of professional care, loyalty and diligence, however, by the misconduct outlined *supra*, they breached that duty; and had they exercised the ordinary care and diligence in representing the

3

Plaintiff during the collateral estoppel disciplinary proceedings, a reasonable person or jury would conclude that the outcome of would have been substantially more favorable to the Plaintiff. (Id., ¶¶ 68-71)

The Plaintiff asserts that the Defendants negligence was a proximate cause of his damages, including but not limited to, the loss of his license to practice law in West Virginia, loss of wages, loss of potential earning power, damage to the Plaintiff's personal and professional reputations, as well as emotional pain and suffering. (Id. at 43, ¶ 72)

### Procedural History

On July 19, 2022, the Plaintiff, proceeding *pro se*,[2] filed his Complaint against the Defendants asserting a state law claim of legal malpractice; the Defendant law firm and its primary attorney, Defendant Bryant, represented the Plaintiff in the matter of *Lawyer Disciplinary Board v. Zappin*, Case No. 18-250, 2021 WL 595869 (W. Va.). (ECF No. 1) On November 7, 2022, the Defendants filed their Answer[3] (ECF No. 9), and subsequently on November 29, 2022, filed their Motion to Dismiss and for a Pre-Filing Injunction and Memorandum of Law in Support of the Motion to Dismiss and for a Pre-Filing Injunction. (ECF Nos. 11, 12) On November 30, 2022, the undersigned issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) advising the Plaintiff of his right to file a response to the Defendants' Motion no later than

---

[2] While the undersigned recognizes that *pro se* litigants are generally afforded more leniency or latitude in their pleadings, as they are proceeding without the benefit of counsel, in this particular case, the Plaintiff was a licensed attorney permitted to practice before this Court until fairly recently (see, *Lawyer Disciplinary Board v. Anthony J. Zappin*, No. 2:21-mc-00039 (S.D.W. Va. Mar. 10, 2021)(Johnston, J.)). Therefore, the undersigned finds that the Plaintiff is not entitled to the liberal construction of pleadings ordinarily afforded to *pro se* litigants. See, Rashad v. Jenkins, 2016 WL 901279, at *3 (E.D. Va. Mar. 3, 2016)(collecting cases).

[3] On October 31, 2022, the undersigned entered a Notice of Failure to Make Service within Ninety Days to the Plaintiff because there was no indication on the docket that he timely served the Defendants pursuant to Rule 4(m) of the Federal Rules of Civil Procedure (ECF No. 8). While the Plaintiff never did respond to this Notice, the filing of the Defendants' Answer rendered this a moot point.

December 16, 2022. (ECF No. 13)[4]

Following the receipt of a Rule 26(f) Report of Planning Meeting (ECF No. 14), the undersigned entered a Scheduling Order (ECF No. 15) on December 15, 2022.

On December 27, 2022, without seeking leave of the Court,[5] the Plaintiff filed an Amended Complaint.[6] (ECF No. 16) On December 29, 2022, the Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint and for a Pre-Filing Injunction[7] as well as a Memorandum of Law in Support of the Motion to Dismiss Plaintiff's Amended Complaint and for a Pre-Filing Injunction. (ECF Nos. 17, 18) The undersigned issued another Roseboro order again advising the Plaintiff to file a response no later than January 17, 2023. (ECF No. 19) On January 17, 2023, the Plaintiff moved for an extension of time to respond to the Defendants' Motion, to January 27, 2023 (ECF No. 20), which the undersigned granted (ECF No. 21).[8] The Plaintiff did not file a response to the Defendants' Motion, despite having been given the extra time to do so, prompting the

---

[4] The Plaintiff did not file any response to the Defendants' initial Motion to Dismiss.

[5] Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

[6] The Scheduling Order provides that the Plaintiff's amended pleadings were due by December 23, 2022. In any event, the Plaintiff's Amended Complaint contains no substantive changes from the initial Complaint as it relates to these Defendants.

[7] In support of the Motion, the Defendants included several exhibits: the Memorandum Decision filed on February 16, 2021 by the West Virginia Supreme Court of Appeals in *Lawyer Disciplinary Board v. Anthony J. Zappin*, Case No. 18-0250 (ECF No. 17 at 4-12); a copy of the *Matter of Zappin*, 100 A.D.3d 1 (2018) that concerns the Plaintiff's New York disciplinary proceedings (Id. at 13-18); the September 15, 2022 United States Court of Appeals for the Second Circuit opinion concerning *Zappin v. Supple, et al*, No. 21-2873 concerning the Plaintiff's appeal of the United States District Court for the Southern District of New York's dismissal of his legal malpractice claim against his attorneys who represented the Plaintiff for part of his New York disbarment proceedings (Id. at 19-20); and a copy of the Memorandum of Law in Support of a Motion to Dismiss Amended Complaint and for a Pre-Filing Injunction filed with this Court in *Anthony Zappin v. Ancil G. Ramey, Steptoe & Johnson, PLLC, Kevin M. Doyle, Jorge Dopico, and Rachael Fletcher Cipoletti*, Case No. 3:22-cv-00080 (Id. at 21-42).

[8] Shortly after the undersigned allowed the Plaintiff an extension to the deadline to file a response to the Defendants' Motion to Dismiss, that same day the Defendants filed a Response to the Plaintiff's request for the deadline extension generally objecting to the motion because the Plaintiff provided no reasons as to why he needed an extension of time, and to point out that he never did file any response to their original Motion to Dismiss despite the Court's prior deadline, and he did not request any extension of that deadline. (ECF No. 22)

undersigned to issue an Order on January 31, 2023 directing the Plaintiff to show cause no later than February 10, 2023 why this action should not be recommended for dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules. (ECF No. 24) The Plaintiff filed a response to the show cause Order on February 10, 2023, indicating that he was unaware that his responsive pleading had not been delivered in spite of mailing same via FedEx (ECF No. 25)[9]; that same day, the Plaintiff also filed his Memorandum of Law in Opposition to Defendant's Motion to Dismiss (ECF No. 26). Finally, the Defendants filed their Reply (ECF No. 28), consequently, this matter is fully briefed and ready for resolution.

### Defendants' Argument in Support of Dismissal and Pre-Filing Injunction[10]

The Defendants point out that the West Virginia Lawyer Disciplinary Board sought revocation of the Plaintiff's law license based on the fact that his law license had been suspended and he was disbarred by the State of New York. (ECF No. 18 at 2) The Defendants represented the Plaintiff through the hearing held before the Hearing Panel Sub-Committee and ceased its representation on August 24, 2020 – the Plaintiff was proceeding *pro se* when the Disciplinary proceeding reached the West Virginia Supreme Court of Appeals. (Id.)

---

[9] The undersigned notes that the Plaintiff did not file his response within the time frame set forth in the Order entered on January 17, 2023 – the envelope the Plaintiff attached to his response to the undersigned's show cause order indicates that it was sent on January 31, 2023 (ECF No. 25-2), which is four (4) days **after** the January 27, 2023 deadline. As an additional matter, the undersigned also finds that the Plaintiff is being disingenuous in his response to the extent that he asserts that "it is often difficult to carve out the time to make submissions to the Court, particularly when the Court imposes short deadlines that tend to become shorter since Plaintiff receives the Court's orders by snail mail." (see ECF No. 25 at 2, ¶ 5) This is vexing, since it was the Plaintiff himself who requested that the initial January 17, 2023 deadline be extended to **January 24, 2023** (see ECF No. 20 at 1), yet the undersigned allowed even more time to the "short deadline" proposed by the Plaintiff. Indeed, the Defendants also filed their own Reply to Plaintiff's Response to the Court's January 31, 2023, Show Cause Order (ECF No. 27), noting that they never received the Plaintiff's responsive Memorandum via regular mail or even e-mail, despite a Certificate of Service indicating it was deposited via U.S. Mail on January 28, 2023 or January 29, 2023. The Defendants further point out that this is not the original Certificate of Service because it purports a re-mailing that occurred on February 9, 2023. (Id.) (see also, ECF No. 26 at 28) The Defendants also point out that the Plaintiff failed to timely file the Rule 26 Disclosures pursuant to the Parties Agreement, which were due on January 31, 2023. (Id.) The undersigned observes that to date, the Plaintiff has not filed Rule 26 Disclosures.

[10] For the sake of simplicity and because the parties focus on the Plaintiff's allegations contained in the Amended Complaint, the undersigned refers to the Defendants' arguments concerning same.

The Defendants state that the Plaintiff had already been disbarred in New York when they represented him, and liken this suit to the one already litigated in New York where the Plaintiff also alleged malpractice against his New York attorneys during the disciplinary proceedings in New York – the Second Circuit held that the Plaintiff was disbarred for misconduct independent of any alleged negligence on behalf of his counsel. (Id. at 4) The Defendants argue that for the same reasons articulated in the New York case, *Zappin v. Supple et al*, 2022 WL 4241358 (2d Cir. 2022), a finding adopted in Scotchel v. Fluharty, 2022 WL 3905940 (W. Va. Aug. 30, 2022) (unpublished),[11] that a plaintiff must establish that "but for" the negligence of the lawyer, he would not have suffered damages. (Id. at 4-5) The West Virginia Supreme Court of Appeals determined that the Plaintiff should be disbarred in West Virginia based upon the discipline that had been imposed by the State of New York as part of a reciprocal proceeding under Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Proceeding. (Id. at 5) Thus, the Plaintiff cannot show the Defendants' alleged negligence is a proximate cause to his reciprocal disbarment in West Virginia – the New York disbarment is. (Id.) The West Virginia Supreme Court of Appeals rejected the Plaintiff's attempt to relitigate his domestic relations case and his disbarment proceedings and relied upon those proceedings to disbar him in West Virginia – those same allegations and attempts to relitigate the New York proceedings cannot be maintained as any basis for legal malpractice against the Defendants. (Id. at 6-7) The Defendants deny having committed legal malpractice and assert that the Plaintiff's complaint fails to state a claim upon which relief can be granted. (Id. at 7)

The Defendants also ask this Court to issue a pre-filing injunction enjoining the Plaintiff from filing future suits without leave of this Court against the Defendants, their counsel, this Court

---

[11] The West Virginia Supreme Court of Appeals supported its finding based on Syl. Pt. 1 of Calvert v. Scharf, 217 W. Va. 684, 619 S.E.2d 195 (2005). Schotchel, 2022 WL 3905940, at *3.

and its employees and staff, or any counsel or law firm representing such persons arising out of the Plaintiff's New York domestic and disciplinary proceedings and the West Virginia disciplinary proceedings and filing by the Plaintiff, *pro se*. (Id. at 8) The Defendants direct the Court's attention to the Memorandum of Law filed in a companion case before this Court[12] which provides the same grounds for supporting a pre-filing injunction against the Plaintiff. (Id.)

### Plaintiff's Response in Opposition[13]

In addition to reasserting his claims against these Defendants, as well as other parties not named as defendants herein, the Plaintiff disagrees with the Defendants' contention that they were not the "but for" cause to the Plaintiff's injuries incurred in the West Virginia disciplinary proceedings. (ECF No. 26 at 17) He realleges that the Defendants were negligent in challenging the sufficiency of the evidence in the New York proceedings as well as the constitutionality therein, all of which was used against the Plaintiff in the West Virginia reciprocal disciplinary proceedings; the Defendants failed to challenge Ms. Cipoletti's reliance upon and use of this evidence, despite the clear violations she committed against the West Virginia Rules of Professional Conduct in her prosecution against the Plaintiff before the Hearing Panel Subcommittee and West Virginia Supreme Court of Appeals. (Id. at 18-25) The Plaintiff also contends that a pre-filing injunction is not warranted, because he has asserted a meritorious claim for legal malpractice and the injunction is essentially "being used to silence Plaintiff for attempting to expose rampant corruption in the legal profession and judiciary." (ECF No. 26 at 26)

### Defendants' Reply

---

[12] This concerns the matter of *Zappin v. Ancil G. Ramey, et al.*, mentioned *supra*, footnote 1.

[13] The undersigned notes that the Plaintiff's Response contains a re-hash of the allegations set forth in the Amended Complaint, and that the majority of it concern matters that are irrelevant to these Defendants.

The Defendants refer the Court to the February 2, 2023 Memorandum Opinion and Order entered by the Honorable Robert C. Chambers in *Zappin v. Ancil G. Ramey, et al*, No. 3:22-cv-00080 wherein Judge Chambers noted on page 31 that "the claims [the Plaintiff] has raised in this Court have been repeatedly re-litigated to the extent that most of them are barred by straight forward application of res judicata and collateral estoppel." (ECF No. 28 at 1-2) The Defendants emphasize that the Plaintiff's own actions in New York were the basis for his West Virginia disbarment and fails the "but for" test endorsed in *Lawyer Disciplinary Board v. Zappin*, Case No. 18-0250 and the New York decision in *Zappin v. Supple, et al.* (Id. at 2-3) Regarding the issue of the pre-filing injunction, and for the same reasons set forth in Judge Chambers' Memorandum Opinion and Order, the Defendants argue their request for a pre-filing injunction should be granted. (Id. at 3)

### The Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959.

Generally, this Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys[14], however, liberal construction "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W. Va. 2007) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## Discussion

As an initial matter, the undersigned notes that although the Plaintiff refers to certain exhibits in his Amended Complaint and Memorandum of Law in Opposition to Defendant's Motion to Dismiss, he failed to attach any exhibits to these pleadings.

Regardless, it is clear from the pleadings that the Plaintiff is still aggrieved by the outcomes in both the New York domestic relations and the disciplinary proceedings, and the resulting reciprocal disciplinary proceedings in West Virginia. The overall grievance endorsed by the

---

[14] Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978); see also, footnote 2, *supra*.

Plaintiff is that but for the alleged taint in the New York proceedings, he would not have suffered disbarment in West Virginia. The undersigned cannot ignore the decision issued by Judge Chambers, recognizing that the West Virginia Supreme Court of Appeals upheld the Plaintiff's disbarment based on the New York divorce and custody proceedings that provided a scathing description of the Plaintiff's misconduct: "dishonesty, fraud, deceit, or misrepresentation, and abusive litigation tactics." See *Zappin v. Ancil G. Ramey, et al.*, No. 3:22-cv-00080, ECF No. 32 at 3) (internal citations omitted). At bottom, the Plaintiff's grievances centers on the West Virginia Supreme Court of Appeals decision to disbar him – thus, to the extent the Plaintiff takes issue with that holding, the undersigned finds that the Plaintiff's claims would be precluded by the <u>Rooker-Feldman</u> Doctrine, which provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment. See <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005); <u>Jonathan R. by Dixon v. Justice</u>, 41 F.4th 316, 339-340 (4th Cir. 2022).

The undersigned has difficulties reconciling the Plaintiff's legal malpractice claims against these Defendants, particularly Defendant Bryant, since the Plaintiff also alleged that "both in briefs and during the evidentiary hearing, Plaintiff and Mr. Bryant meticulously walked through and presented evidence Plaintiff was denied notice and a fair opportunity to be heard as to the New York misconduct findings both in the underlying [New York domestic relations proceeding] and the collateral estoppel disciplinary action." (See ECF No. 16 at 36, ¶ 51)[15] The Plaintiff has also

---

[15] See also ECF No. 26 at 10 ("A hearing was held before the Hearing Panel Subcommittee where Defendants, on behalf of Plaintiff, essentially presented the same evidence that was presented in their two (2) motions . . . Ms. Cipoletti presented no evidence and did not even attempt to rebut Plaintiff's evidence . . . ."); <u>Id.</u> at 15 ("On Plaintiff's behalf, Defendants filed motions before the Hearing Panel Subcommittee that challenged the procedures of the New York collateral estoppel proceeding on Due Process grounds and attacked the evidence used in the New York collateral estoppel disciplinary proceeding as infirm."; <u>Id.</u> at 20 ("Plaintiff, th[r]ough Defendants, presented overwhelming and conclusive evidence in both the Infirmity Motion and at the hearing to the Hearing Panel Subcommittee that Justice Cooper's findings were not only not supported by any evidence in the record, but they were manufactured and fabricated."

alleged that the Defendants "filed motions before the Hearing Panel Subcommittee on Plaintiff's behalf requesting that reciprocal discipline not be imposed due to an infirmity in the evidence in the New York disciplinary proceeding and that the procedures in New York did not comply with Due Process." (ECF No. 26 at 10) The Plaintiff further alleged that "[a]t no point" did Ms. Cipoletti "attempt to rebut any of the evidence proffered by Plaintiff" but instead pursued "false" allegations of attorney misconduct in her prosecution against the Plaintiff. (Id. at 36-37, ¶ 51) The Plaintiff merely restates that Ms. Cipoletti lied repeatedly before the Hearing Panel Subcommittee and the West Virginia Supreme Court of Appeals, and that the Defendants failed to hold her accountable for these falsehoods. The Plaintiff's repeated allegations of the "lies" Ms. Cipoletti presented during the reciprocal disciplinary proceedings were obtained from the New York proceedings – all matters that Judge Chambers has since found to be barred under the doctrine of *res judicata*.[16]

The Plaintiff's confusing and/or confused allegations of malpractice do nothing to advance these claims against the Defendants, for instance, in his response in opposition to the pending motion to dismiss, he states the following:

> Plaintiff does not allege anywhere in the Amended Complaint that Defendants committed malpractice due to their failure to challenge or "relitigate" the evidence and procedures of the New York proceeding. Rather, Plaintiff's bases for contending that Defendants' committed malpractice . . . fall in two (2) distinct categories: (i) that the Defendants failed to raise the challenges to the evidence and procedures in the New York proceeding at the appropriate time and before the appropriate tribunal; and (ii) the Defendants failed to take action in the face of Ms. Cipoletti's rampant and continuous attorney misconduct that tainted the entire reciprocal matter.

---

[16] Judge Berger had addressed these particular grievances against Ms. Cipoletti as well, and ultimately dismissed the Plaintiff's Amended Complaint for lack of jurisdiction. See *Zappin v. Cipoletti*, 2021 WL 4392043, at *2 (S.D.W. Va. Sept. 24, 2021), *reconsideration denied*, 2021 WL 5989067 (S.D.W. Va. Dec. 17, 2021), *aff'd*, No. 22-1065, 2022 WL 2914729 (4th Cir. Jul. 25, 2022).

(ECF No. 26 at 16-17) For starters, the undersigned is perplexed as to what the "appropriate time" would be or the "appropriate tribunal" – the Defendants only represented the Plaintiff before the Hearing Panel Subcommittee, and it appears from the face of the Plaintiff's own pleadings that they did indeed raise these challenges (perhaps with the Plaintiff's assistance) both in writing and during the evidentiary hearing. As to what "action" the Defendants were supposed to take against Ms. Cipoletti, the Plaintiff fails to specify, outside of his conclusory allegations that she violated numerous Rules governing professional conduct. To that extent, the Plaintiff's claims of legal malpractice against these Defendants appears to be nothing more than an attempt to resurrect claims once again against Ms. Cipoletti that have since been adjudicated on their merits.

Another facially inconsistent claim against the Defendants is that the Plaintiff charges them with negligence for failing to seek discovery from Ms. Cipoletti (Id. at 40, ¶ 62), however, in the very same paragraph, the Plaintiff concedes that "[a]lthough they served discovery demands – which Plaintiff drafted – on Ms. Cipoletti, they refused to file a motion to compel with either the Hearing Panel Subcommittee or the West Virginia Supreme Court of Appeals." (Id.) As an initial matter, the mention of not filing certain pleadings before the West Virginia Supreme Court of Appeals is confusing, since the Plaintiff also appears to concede that these Defendants withdrew from representing the Plaintiff in July 2020 shortly after the Hearing Panel Subcommittee issued its decision, and that he proceeded *pro se* before the West Virginia Supreme Court of Appeals. (See ECF No. 26 at 13) In any event, the pertinent portions of the Rule cited by the Plaintiff in support of this particular alleged act of negligence provides as follows:

**Rule 3.4. Prehearing Discovery and Time and place of hearing.**

Within 20 days from the date of service of the Statement of Charges, or at least 60 days prior to the date of the scheduled hearing, whichever is sooner, the Office of Disciplinary Counsel shall (a) provide the respondent with the complete identity, address and telephone number of any person with knowledge about the

facts of any of the charges; provide a copy of any statements of any such person in the possession or under the control of Disciplinary Counsel or which can be reasonably obtained by Disciplinary Counsel; provide a list of the proposed witnesses to be called at the hearing, including their addresses, telephone numbers, and a summary of their anticipated testimony; provide a disclosure of any trial expert pursuant to the requirements of Rule 26(b)(4) of the West Virginia Rules of Civil Procedure; provide inspection and copying of the results of any reports of physical or mental examinations or scientific tests or experiments; and provide a list and copy of any proposed exhibit to be used at the hearing. ***Disciplinary Counsel shall not be required to furnish or produce any material which would contain opinion work product information or which would be violative of the attorney/client privilege between the Office of Disciplinary and the Investigative Panel; and (b) Disciplinary Counsel shall be required to disclose any exculpatory evidence within 20 days from the date of service of the Statement of Charges, with a continuing duty to do so throughout the disciplinary process***, which information would in any way bear on the issue of the charges or the recommended discipline. Any documents or information not disclosed by Disciplinary Counsel under a claim of privilege shall be listed and sufficiently described so that the opposing party can determine whether to contest such claim of privilege.

Within 30 days after receiving Disciplinary counsel's ***mandatory*** discovery, the respondent shall provide the Office of Disciplinary Counsel with the complete identity, address and telephone number of any person with knowledge about the facts of any of the charges; provide a list of the proposed witnesses to be called at the hearing, including their addresses, telephone numbers, and a summary of their anticipated testimony; provide a disclosure of any trial expert pursuant to the requirements of Rule 26(b)(4) of the West Virginia Rules of Civil Procedure; provide inspection and copying of the results of any reports of physical or mental examinations or scientific tests or experiments; and provide a list and copy of any proposed exhibit to be used at the hearing.

The respondent shall be entitled to depose the complainant or complainants on any charge. ***No other depositions or other method of discovery shall be permitted except upon motion to the Chairperson of the Hearing Panel Subcommittee and only upon a showing of good cause for such additional discovery.*** The Chairperson of the Hearing Panel Subcommittee shall have authority to hear and resolve objections to discovery. Unless otherwise ordered by the Hearing Panel Subcommittee, discovery materials shall not be filed with the Clerk of the Supreme Court of Appeals, but shall be retained by the parties and delivered to the Subcommittee if necessary for any prehearing matters.

(**Bold** in original, ***emphasis*** added).

Clearly, Ms. Cipoletti had ongoing and mandatory discovery obligations, that included the disclosure of any exculpatory evidence, ostensibly relieving the Plaintiff and his counsel, of having

to submit discovery requests. While the Rule does not indicate what procedures are to be taken regarding motions to compel discovery, it does specify that "other" methods of discovery can be made, but only upon a motion to the Chairperson of the Hearing Panel Subcommittee and "only upon a showing of good cause for such additional discovery." As an additional matter, while the Plaintiff repeatedly complains he was entitled to exculpatory evidence Ms. Cipoletti had in her possession, he does not specify what this is. (See ECF No. 16 at 40, ¶ 63) It is also concerning that the Plaintiff indicates that he was entitled to "communications that counsel for the New York Attorney Grievance Committee (Jorge Dopico and Kevin Doyle) and their counsel [*sic*] West Virginia counsel Ancil Ramey were exerting pressure on Ms. Cipoletti to maintain the reciprocal disciplinary proceeding against Plaintiff[.]" (Id.) Though the Plaintiff fails to address this, it is unclear if such communications would also fall within the opinion work product or attorney-client privilege that Ms. Cipoletti was under no obligation to furnish to the Plaintiff.

This potentially includes the Plaintiff's contention that the Defendants "were negligent in their failure to subpoena the New York Attorney Grievance Committee for Mr. Doyle's communications with Justice Cooper" which would have shown "Mr. Doyle and Justice Cooper worked hand-in-hand to draft both the September 18, 2015 Sanction Decision and the February 29, 2016 Child Custody Decision in *Zappin v. Comfort*[17] in an effort to conjure up misconduct findings and a disciplinary case against Plaintiff." (Id. at 41, ¶ 64) On the surface, these communications appear to fall within opinion work product or attorney-client privilege: Mr. Doyle prosecuted the New York collateral disciplinary action, under the supervision of Mr. Dopico. See

---

[17] This matter concerns the Plaintiff's New York domestic relations proceeding, wherein certain acts of misconduct levied against the Plaintiff later became the basis for the New York collateral estoppel disciplinary proceeding. See *Zappin v. Comfort*, 26 N.Y.S.3d 217 (N.Y. Sup. Ct. 2015), *aff'd*, 49 N.Y.S.3d 6 (2017), *appeal dismissed by*, 102 N.E.3d 1056 (N.Y. 2018) (regarding the Sanctions Order); *Zappin v. Comfort*, 65 N.Y.S.3d 30 (2017), *appeal dismissed by*, 102 N.E.3d 1056 (N.Y. 2018) (regarding the divorce decree). (See, e.g., ECF No. 16. at 2-32)

*Matter of Zappin*, 73 N.Y.S.3d 182 (N.Y. App. Div. 2018).[18] These allegations of legal malpractice against these Defendants seem to be an attempt to bootstrap these claims he made previously against the attorneys who represented the Plaintiff during the New York disciplinary proceedings: *Zappin v. Hamilton*, No. 3:20-cv-00209 (S.D.W. Va. Mar. 23, 2020); *Zappin v. Supple*, No. 3:20-cv-00210 (S.D.W. Va. Mar. 23, 2020). Of interest here is that the Southern District of New York already determined that the Plaintiff's amended complaint against his previous attorneys failed to state a malpractice claim because he did not demonstrate that "but for" their negligence, he would not have been disbarred. See *Zappin v. Supple*, 2021 WL 2736136, at *4 (S.D.N.Y. Jul. 1, 2021), *reconsideration denied*, 2021 WL 5502760 (S.D.N.Y. Nov. 2, 2021), *aff'd*, 2022 WL 4241358 (2ⁿᵈ Cir. Sept. 15, 2022).[19]

It is also significant that in the Memorandum Decision entered on February 16, 2021, the West Virginia Supreme Court of Appeals noted from the onset that the reciprocal disciplinary proceeding against the Plaintiff was brought pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, which provides in pertinent part:

> (a)    A final adjudication in another jurisdiction, whether state or federal, of misconduct constituting grounds for discipline of a lawyer or a voluntary surrender of a license to practice in connection with a disciplinary proceeding shall, for the purposes of proceedings pursuant to these rules ***conclusively establish such***

---

[18] Justice Cooper presided over the Plaintiff's domestic relations matter after it was transferred from Justice Kaplan, against whom Justice Cooper found that the Plaintiff made "deeply personal, and frankly outrageous, verbal attacks[.]" See *Zappin v. Comfort*, 26 N.Y.S.3d at *3. Notably, in affirming the New York divorce judgment, the Appellate Court found that Justice Cooper's determination that the Plaintiff's testimony was frequently untruthful to be supported by the record. See Id., 102 N.E.3d at 498. Based on the findings of Justice Cooper, the Attorney Grievance Committee charged the Plaintiff with professional misconduct, ultimately leading to his disbarment. *Matter of Zappin*, 73 N.Y.S.3d at 9. There is a litany of additional civil actions the Plaintiff filed against those judges and lawyers involved in the New York proceedings that simply have no relevance to these Defendants and the undersigned declines to belabor those details herein, although Judge Chambers did provide a succinct recitation of those proceedings in the Memorandum Opinion and Order, *supra*.

[19] In those proceedings, the Plaintiff had alleged legal malpractice claims that are strikingly similar to those set forth herein: his attorneys failed to file specific motions in his disciplinary proceeding collaterally attacking the findings based on Justice Cooper's findings in his divorce proceeding, which resulted in the Plaintiff sustaining damages – the loss of his West Virginia law license.

*conduct*. Accordingly, a Hearing Panel Subcommittee may take action without conducting a formal hearing.

(*emphasis* added) (See ECF No. 17 at 4) Under this Rule, it allows for a different perspective on the standard governing suits against an attorney for negligence, specifically in this case, where the plaintiff must prove the following: (1) the attorney's employment; (2) his neglect of a reasonable duty: and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff. See Calvert v. Scharf, 619 S.E.2d 197 (W. Va. 2005). While at times it appears the Plaintiff conflates when the Defendants owed him a reasonable duty in their representation of him (as noted *supra*, at times the Plaintiff seems to allege negligence by these Defendants before the West Virginia Supreme Court of Appeals, but he also seems to concede that they ceased representation at that point, because he then proceeded *pro se*), there appears to be no dispute that the Defendants were retained by the Plaintiff during the proceedings before the Hearing Panel Subcommittee, thus the first prong is satisfied.

Evidence surrounding the second prong is not so clear. Again, as noted *supra*, the Plaintiff has alleged some contradictory claims: for instance, the Defendants failed to conduct discovery, but then they did actually serve discovery requests upon Ms. Cipoletti; that the Defendants failed to file motions to compel, although the Rules governing the procedures in Lawyer Disciplinary proceedings indicate that such motions require a demonstration of good cause; that the Defendants failed to subpoena lawyer communications between Ms. Cipoletti and other counsel, when such communications appear to be foreclosed from production; that the Defendants were negligent by failing to subpoena the communications between counsel for the New York Attorney Grievance Committee and Justice Cooper, when the attorney-client privilege or work product opinion may preclude such measures, yet this also concerns materials that should have been raised, if they had not been already, during the New York proceedings. In essence, the Plaintiff is attempting to blame

mistakes others may have committed on these Defendants, and these mistakes do not seem dispositive on these proceedings, particularly in light of the findings made by the New York courts. Regardless, the Plaintiff appears to be holding the Defendants hostage to a legal standard of care that goes well beyond the boundaries established by the West Virginia Supreme Court of Appeals. See, Id. at 208. ("An attorney cannot be held liable for every mistake made in his or her practice .... Such a blanket duty would possibly 'amount to a requirement to draft litigation proof legal documents. This unlimited liability ... would result in a speculative and almost intolerable burden on the legal profession ....' " (internal citations omitted) (quoting Ventura County Humane Soc'y v. Holloway, 40 Cal.App.3d 897, 905, 115 Cal.Rptr. 464, 469)). Moreover, despite there being no right or guarantee to a formal hearing before the Hearing Panel Subcommittee pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, the Plaintiff, through the assistance of the Defendants, succeeded in obtaining a formal hearing that occurred over two days – this is just another instance of the Defendants' exercise of a reasonable duty to the Plaintiff.[20]

Adding another wrinkle to this notion of issuing a subpoena for counsels' communications in the New York disciplinary proceedings and/or domestic relations matter with the Justice who presided over and made the factual findings therein, is that the New York courts have already rejected the Plaintiff's contentions that the evidence of his misconduct was infirm. To that extent, it appears that the Plaintiff seeks to relitigate issues previously decided by courts of competent jurisdiction. This is important as it relates to the reciprocal proceedings in West Virginia, because despite the Plaintiff's repeated claims that Ms. Cipoletti never "rebutted" his *and* his then-

---

[20] On this particular point, Ms. Cipoletti argued that the Plaintiff's representation to the West Virginia Supreme Court of Appeals that his case "was plagued by repeated delays and stalling by both" the Office of Disciplinary Counsel and the Hearing Panel Subcommittee was "inaccurate" because during Defendant Bryant's representation of the Plaintiff before the Hearing Panel Subcommittee, he moved to continue the hearing at least twice to accommodate the Plaintiff's scheduling conflicts. See "Reply Brief of The Lawyer Disciplinary Board", *Lawyer Disciplinary Board v. Zappin*, 2021 WL 408782, at *1-2.

counsel's (the Defendants herein) argument that the evidence of his professional misconduct in New York was infirm, the Office of Disciplinary Counsel was under no obligation to dispute these claims: "[A] final adjudication of professional misconduct in another jurisdiction conclusively establishes the fact of such misconduct for purposes of reciprocal disciplinary proceedings in this state." Syl. Pt. 1, <u>Lawyer Disciplinary Bd. v. Post</u>, 631 S.E.2d 921 (W. Va. 2006). Thus, the Plaintiff's arguments do not sufficiently support a finding that the Defendants neglected a "reasonable duty" to the Plaintiff.

Nevertheless, even assuming *arguendo* that the Plaintiff has shown that the Defendants neglected their reasonable duties to him before the Hearing Panel Subcommittee, even a cursory review of the findings made by the New York courts, and subsequently deemed "conclusively established" during the reciprocal disciplinary proceeding in West Virginia, does nothing to advance the Plaintiff's claim of legal malpractice. The Lawyer Disciplinary Board noted that the New York Departmental Disciplinary Committee recommended the Plaintiff be disbarred, "stating that '[t]he duration, ferocity and maliciousness of this volatile attorney's misconduct make manifest his present unfitness to practice law.' " *Lawyer Disciplinary Board v. Zappin*, 2021 WL 595869, at *4. As for the Plaintiff's myriad acts of professional misconduct that the New York tribunal found, it was further noted that his

> numerous instances of misbehavior may have all occurred in the same litigation, but it was extensive and unbridled. He accused and abused three judges in two states, lied continuously, condoned others' perjury, altered documents, physically abused his wife, and more, during years of litigation. There are no significant mitigating circumstances, but [the Plaintiff's] lack of remorse and evident lack of respect for the judicial process are serious aggravating factors.

<u>Id</u>. Basically, in order to discern the Plaintiff's legal malpractice claim, this Court would also have to re-examine the underlying New York proceedings – and it is apparent that the Plaintiff seems to have invited this Court to do exactly this, as he has provided repeated recitations of the domestic

relations and the disciplinary proceedings in New York. Yet, the West Virginia Supreme Court of Appeals rejected this invitation:

> Succinctly stated, [the Plaintiff's] attempt to relitigate the factual findings of the New York courts and have this Court overturn those findings is simply not properly before us. (internal citations omitted) Instead, the only issue before us is whether there was "a total infirmity of proof of misconduct." (internal citations omitted) The [House Panel Subcommittee] found that the facts developed in the New York custody proceedings established misconduct committed by [the Plaintiff] involving dishonesty, fraud, deceit, or misrepresentation, and abusive litigation tactics. We agree and find no "total infirmity" of proof of misconduct in the New York proceeding. (internal citations omitted)

Id., at *5.

Ultimately, the West Virginia Supreme Court of Appeals found that the evidence of the Plaintiff's professional misconduct were sufficient grounds for his disbarment – in short, the Defendants were not the "but for" proximate cause of the Plaintiff's loss of his license to practice law in West Virginia – the Plaintiff's own professional misdeeds in New York were the "but for" proximate cause for his reciprocal disbarment, and the Defendants had nothing to do with those proceedings.

Finally, regarding the Defendants' request for a pre-filing injunction, they move not only for the Defendants themselves, but also for their counsel, namely, Robert L. Bays, Esq. and the law firm of Bowles Rice LLP. (See, e.g., ECF No. 17 at 1) In determining whether a pre-filing injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. See Cromer v. Kraft Foods North America, Inc., 390 F.3d 812, 818 (4th Cir. 2004) (internal citations omitted). There is great

support for such an injunction: after a thorough examination of these four factors, Judge Chambers recently adopted the proposed findings and recommendations by Magistrate Judge Eifert, and granted such relief against this Plaintiff. See *Zappin v. Ramey*, 2023 WL 1469995, at *15 ("Mr. Zappin is ENJOINED from further filings in this Court against any current or former New York or West Virginia judge, official, employee, or counsel representing such persons in previous litigation involving the Plaintiff arising out of the New York divorce proceeding, the New York disciplinary proceeding, or the West Virginia reciprocal disciplinary proceeding without first seeking leave from this Court.")

Another important consideration for this Court in assessing whether the pre-filing injunction should be issued herein is that Judge Chambers also held that by virtue of the doctrines of *res judicata* and collateral estoppel, the Plaintiff was precluded from relitigating any factual or legal issues that have already been determined in the Sanctions Order, Divorce Judgment, and disbarment proceedings. *Id*., at *12. This is particularly relevant in light of the holdings concerning the Plaintiff's legal malpractice claims against these Defendants. In his Memorandum Opinion and Order, Judge Chambers also observed that two of the defendants named in the Plaintiff's lawsuit had represented the defendants in the ***prior*** action before Judge Berger. *Id*., at *4 (citing *Zappin v. Cipoletti*, No. 2:21-cv-00119, 2021 WL 4392043, at *1 (S.D.W. Va. Sept. 24, 2021), *reconsideration denied*, 2021 WL 5989067 (S.D.W. Va. Dec. 17, 2021), *aff'd*, No. 22-1065, 2022 WL 2914729 (4th Cir. Jul. 25, 2022)). For obvious reasons, the Defendants' counsel and law firm have good grounds seeking injunctive relief as well, because the Plaintiff's litigation history demonstrates that they, too, may find themselves being sued, for likely the same issues raised in this action, and others previously filed and adjudicated by other tribunals.

In any event, upon examination of the circumstances to justify a pre-filing injunction, under the first factor, there is no question that the Plaintiff has filed a plethora of lawsuits, not just in New York courts[21], but also in this District, cited *supra* – however, it is significant that in many, if not all, of those lawsuits, including the one bar, include the same recitation of grievances the Plaintiff has alleged time and time again. As the Court is aware, the majority of the Plaintiff's allegations in the complaint(s) currently pending concerns matters arising in New York, including his divorce and disbarment proceedings there – matters that have nothing to do with these Defendants. Interestingly, the Southern District of New York issued not just one, but **two** pre-filing injunctions against the Plaintiff, as he continues his years-long battles in court on issues that have already been adjudicated on the merits. See *Zappin v. Comfort*, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022). Against this background, this factor leans heavily in favor of granting a pre-filing injunction.

Regarding the second factor, while the Plaintiff has proceeded *pro se* in this case, he is not an unsophisticated litigator, obviously, having previously been licensed to practice law in New York and West Virginia. This sophistication weighs against this Plaintiff, as this Court and New York courts have observed that the Plaintiff continues to relitigate matters to the point of being barred by the doctrines of *res judicata* or collateral estoppel; in short, given his legal credentials, there is no substantive support to any finding that the Plaintiff had or has a good faith basis for pursuing this litigation. The fact that he continues to express his grievances against other individuals in this lawsuit (including, for instance, pictures of his ex-wife in both the Complaint

---

[21] See, e.g., *Zappin v. Cooper*, 2022 WL 985634, at *1 (S.D.N.Y. Mar. 31, 2022) (in granting a motion for a filing injunction, the court observed that "the instant action is just one of sixteen suits Zappin has filed – in state and federal court – against Justice Cooper, New York State, and other state officials arising out of his divorce, disbarment, and an alleged encounter with Justice Cooper on a city sidewalk that resulted in Zappin's prosecution for filing a false police report."

and Amended Complaint, see ECF No. 1 at 12, 13; ECF No. 16 at 12, 13), who have nothing to do with these Defendants, indicates a vengeful or harassing nature, as opposed to a genuine interest in pursuing justice. To that extent, the second factor also favors granting of injunctive relief.

As already discussed *supra*, this Court and other courts have recognized that the Plaintiff has filed several lawsuits, consuming not only this Court's time for consideration of his numerous, and mostly irrelevant allegations, but also requiring numerous others' time and expenses to defend against his claims. Notably, despite his efforts, the Plaintiff has not succeeded in obtaining his requested relief, he just finds new targets of his ire, who are then burdened with both the temporal and financial costs of defending issues that are not only duplicative, but have already been adjudicated. To that extent, the third factor is met.

Finally, with regard to the fourth consideration, it is significant that Judge Chambers noted that the New York proceedings demonstrated that monetary sanctions had no effect on this Plaintiff, and that **one** pre-filing injunction was ineffective, thus necessitating **two**. See, *Zappin v. Ramey*, 2023 WL 1469995, at *15. On that note, this Court should issue a second injunction, and pray that puts an end to this Plaintiff's efforts to find additional victims of his litigious warfare.

## <u>PROPOSAL AND RECOMMENDATION</u>

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** the Defendants' *Motion(s) to Dismiss and for a Pre-Filing Injunction* (ECF Nos. 11, 17), **DISMISS** the Plaintiff's Complaint and Amended Complaint (ECF Nos. 1, 16), with prejudice, **REMOVE** this action from the Court's docket, and **IMPOSE** a Pre-Filing Injunction that prohibits this Plaintiff from filing any further civil action in this District against these Defendants, their counsel of record, any current or former New York or West

Virginia judge, official, employee, or counsel representing such persons in previous litigation involving the Plaintiff arising out of the New York divorce proceeding, the New York disciplinary proceeding, or the West Virginia reciprocal disciplinary proceeding, or prosecution for any tangentially related matters, civil or criminal, that may be connected thereto, without first seeking leave from this Court.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Johnston and this Magistrate Judge.

The Clerk is directed to mail a copy of this Order to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

ENTER: March 13, 2023.



Omar J. Aboulhosn
United States Magistrate Judge