**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ANTHONY ZAPPIN,

                Plaintiff,

v.                                   CIVIL ACTION NO.   2:22-cv-00292

CAREY, DOUGLAS, KESSLER, & RUBY, PLLC, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' S. Benjamin Bryant's and Carey Douglas Kessler & Ruby PLLC's ("Defendants") Motion to Dismiss Plaintiff's Amended Complaint and for a Pre-Filing Injunction.   (ECF No. 17.)   For the reasons more fully explained below, the Court **GRANTS** Defendants' motion, (ECF No. 17), **OVERRULES** Plaintiff's objections, (ECF No. 32), **ADOPTS** the PF&R, (ECF No. 30), and **DISMISSES** this action.   The Court also hereby **ENJOINS** Plaintiff Anthony Zappin ("Plaintiff") from further filings in this Court against these Defendants or their counsel without first seeking prior approval by this Court.

*I.       BACKGROUND*

A.  Factual History

Plaintiff is a thrice-disbarred attorney who now proceeds *pro se*.   *Zappin v. Ramey*, 3:22-cv-80, 2023 WL 1469995, at *1 (S.D. W. Va. Feb. 2, 2023).   Plaintiff first lost his New York law license after he committed repeated "egregious and outrageous acts of [professional] misconduct"

1

during his own divorce proceedings. *Matter of Zappin*, 73 N.Y.S.3d 182, 187 (N.Y. App. Div. 2018). Matters only worsened from there. Upon learning of his New York disbarment, the West Virginia Office of Disciplinary Counsel initiated reciprocal disciplinary proceedings against Plaintiff. (ECF No. 16 at 26, ¶ 33.) The West Virginia Supreme Court heard the evidence and annulled Plaintiff's West Virginia law license, too. *Law. Disciplinary Bd. v. Zappin*, No. 18-0250, 2021 WL 595869 (W. Va. Feb. 16, 2021) (memorandum decision).

These disbarments have brought out Plaintiff's litigious side. In fact, since his divorce, he has sued nearly everyone affiliated with his disbarments, even those remotely connected. *See, e.g.*, *Zappin v. Hamilton*, 3:20-cv-00209 (S.D. W. Va. Mar. 23, 2020) (Plaintiff's counsel from New York disbarment proceedings); *Zappin v. Supple*, 3:20-cv-00210 (S.D. W. Va. Mar. 23, 2020) (same); *Zappin v. Cipoletti*, 2:21-cv-00119, 2021 WL 4392043 (S.D. W. Va. Sept. 24, 2021), *reconsideration denied*, 2021 WL 5989067 (S.D.W. Va. Dec. 17, 2021), *aff'd*, No. 22-1065, 2022 WL 2914729 (4th Cir. July 25, 2022) (all five Justices of the West Virginia Supreme Court, Clerk of that Court, West Virginia disciplinary board lawyer, and disciplinary panel members that recommended Plaintiff's disbarment); *Ramey*, 2023 WL 1469995, at *4 (defense counsel in *Cipoletti*); *Zappin v. Cooper*, 16 Civ. 5985, 2018 WL 708369, at *1 (S.D.N.Y. Feb. 2, 2018), *reconsideration denied*, 2018 WL 2305562 (S.D.N.Y. May 18, 2018), *aff'd*, No. 18-1545, 768 F. App'x 51 (2d Cir. May 15, 2019) (New York judge that found Plaintiff had committed professional misconduct); *Zappin v. Daily News, L.P.*, 16 Civ. 8762, 2017 WL 3425765 (S.D.N.Y. Aug. 9, 2017) (news outlet that reported on Plaintiff's divorce proceedings); *Zappin v. Doyle*, 17 Civ. 8837, 2018 WL 2376502 (S.D.N.Y. Apr. 10, 2018) (New York disciplinary counsel and New York judges that presided over Plaintiff's divorce).

Defendants are his latest target.   Plaintiff alleges they committed malpractice during the brief stint they represented him in the reciprocal disciplinary proceedings.   (*See generally* ECF No. 16.)   However, before wading into this latest installment of *Zappin*-litigation, the Court will briefly recount the oft-told facts of Plaintiff's disbarments.

### 1.   New York Disbarment

This all began during Plaintiff's New York divorce proceedings.   There, he appeared *pro se* and "d[id] everything in his power to undermine the legal process and use his law license as a tool to threaten, bully, and intimidate."   *Zappin v. Comfort*, 26 N.Y.S.3d 217, 2015 WL 5511519, at *1 (N.Y. Sup. Ct. Sept. 18, 2015), *aff'd.* 49 N.Y.S.3d 6 (N.Y. App. Div. 2017).   The presiding judge cautioned Plaintiff that his "continuing . . . campaign of harassment and abuse" "call[ed] into question his fitness to practice law."   *Id.* at *1, 14.   Yet Plaintiff carried on.   When it was all said and done, the judge found that Plaintiff

> had repeatedly perpetrated acts of domestic violence against his wife; had testified falsely at a custody trial; had knowingly introduced falsified evidence during the proceedings in the form of altered text messages; had presented misleading testimony through his expert witnesses; had . . . engaged in acts that repeatedly demonstrated disrespect for the court and counsel, by, inter alia, flouting the judicial directives of three judges . . . , setting up a fake website about the attorney for the child by registering her name as a domain name and posting derogatory messages about her on it, and baselessly filing a disciplinary complaint against a court-appointed psychiatric expert witness.

*Matter of Zappin*, 73 N.Y.S.3d at 183–84.   The judge also found that Plaintiff

> had sent text messages to his wife, an attorney, threatening her with loss of her license to practice law and professional ruin; had made grossly offensive remarks during cell phone conversations with his then three-month-old son in which he baselessly accused his father-in-law of being a child sexual abuser who could harm the child; had engaged in frivolous and abusive litigation against his wife, her parents, and her attorneys; and had attempted to publicly defame the attorney for the child.

*Id.* at 184.

These findings proved problematic for Plaintiff.   New York bar authorities soon charged him with professional misconduct based on the judge's findings.   *Id.* at 183–84.   Plaintiff fought the allegations tooth and nail, but his efforts were in vain.   *See id.* at 183.   The New York courts held that Plaintiff was collaterally estopped from challenging the judge's misconduct findings and thus disbarred him.   *Id.* at 183, 189.

### 2.  *West Virginia Disbarment*

At the time, Plaintiff also had a West Virginia law license.   He promptly notified the Office of Disciplinary Counsel ("ODC") of his New York disbarment,[1] and the ODC immediately filed a reciprocal disciplinary action against him.   (ECF No. at 26, ¶ 33.)

Plaintiff hired Defendants to represent him in these proceedings.[2]   (*See generally* ECF No 16; *see also* ECF No. 32 at 10.)   Plaintiff, presumably acting through Defendants, requested a formal hearing before a Hearing Panel Subcommittee ("HPS") in hopes of avoiding reciprocal discipline.[3]   *Zappin*, 2021 WL 595869, at *4 n.10.   In the lead up to the hearing, "Defendants filed motions . . . on Plaintiff's behalf requesting that reciprocal discipline not be imposed" for a handful of reasons.   (ECF No. 32 at 10.)   At the subsequent two-day hearing, Plaintiff alleges that he and Defendants "meticulously walked through and presented evidence" showing that reciprocal discipline was unwarranted.   (ECF No. 16 at 35, ¶ 47.)   Nevertheless, the HPS recommended that the West Virginia Supreme Court annul Plaintiff's law license, and Defendants

---

[1]  Rule 3.20(b) of the West Virginia Rules of Disciplinary Procedure requires all lawyers licensed in West Virginia to "notify the Office of Disciplinary Counsel of [any foreign discipline imposed] in writing within ten days" of imposition.
[2]  Plaintiff's Amended Complaint does not specify when he hired Defendants, but based on the facts he does provide, it must have been at the outset of the reciprocal disciplinary proceedings.
[3]  Plaintiff's Amended Complaint is also silent as to who requested the hearing.

withdrew as Plaintiff's counsel not long after. *Zappin*, 2021 WL 595869, at *4. Plaintiff—by then appearing *pro se*—argued his case to the West Virginia Supreme Court, repeating the arguments he and Defendants made before the HPS. *Id.* at *5–6. These efforts were also futile—the West Virginia Supreme Court relied on the New York courts' misconduct findings and disbarred Plaintiff. *Id.*

B. Procedural History

Plaintiff now blames Defendants for his West Virginia disbarment. He filed suit in this Court on July 19, 2022, invoking this Court's jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) Plaintiff's single-count complaint alleges Defendants committed legal malpractice during his reciprocal disciplinary proceedings. (*Id.*)

On November 29, 2022, Defendants filed a motion to dismiss and for a pre-filing injunction against Plaintiff. (ECF No. 11.) Plaintiff thereafter filed an Amended Complaint (without leave to do so) on December 27, 2022.[4] (ECF No. 16.) Defendants then filed a second motion to dismiss and again sought a pre-filing injunction on December 29, 2022. (ECF No. 17.) Plaintiff filed a timely response on February 10, 2023, (ECF No. 26), to which Defendants replied on February 16, 2023, (ECF No. 28). Once ripe, Magistrate Judge Aboulhosn entered a proposed findings and recommendation for disposition ("PF&R"), wherein he recommended that this Court (1) dismiss the Amended Complaint for failure to state a claim and (2) enter a pre-filing injunction against Plaintiff. (ECF No. 30.) Plaintiff filed timely objections on March 30, 2023. (ECF No. 32.)

---

[4] As the Magistrate Judge observed, the Amended Complaint contains no substantive changes that relate to Defendants. (ECF No. 30 at 5 n.6.)

## II.    LEGAL STANDARD

A.  Review of Magistrate Judge's Findings and Recommendations

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a plaintiff "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  Although courts generally construe *pro se* filings liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), that leniency is not afforded "to lawyers who file *pro se*."  *Ramey*, 2023 WL 1469995, at *6 (italics added).

B.  Motion to Dismiss Standard

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.  Fed. R. Civ. P. 12(b)(6).  A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).  A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  In applying this standard, a court must utilize a two-pronged approach.  First, it must separate the legal conclusions in the complaint from the factual allegations.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."   *Id.*   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.

## III.    DISCUSSION

As noted above, the Magistrate Judge recommended that this Court (1) dismiss the Amended Complaint for failure to state a claim, and (2) enter a pre-filing injunction against Plaintiff.   (ECF No. 30.)   Plaintiff objects only to the first recommendation, (ECF No. 32), so the Court cabins its review accordingly, *Thomas*, 474 U.S. at 150 (district courts need not review sections of the PF&R to which no objection is made).

### A.  Governing Law

Before analyzing Plaintiff's claim, the Court must review the governing law.   This is a diversity case, so the Court starts with West Virginia's legal malpractice jurisprudence.   *Megaro v. McCollum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023) ("A federal court sitting in diversity applies the substantive law of the state in which it sits.").   Once complete, the Court then outlines West Virginia's reciprocal disciplinary rules and procedures.

### 1. Legal Malpractice

Legal malpractice claims have three elements.  Syl. Pt. 1, *Calvert v. Scharf*, 619 S.E.2d 197 (W. Va. 2005).   The plaintiff must prove: "1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff."  *Id.*  Failure to prove any of these "three elements is fatal to the[] claim."  *Otto v. Catrow Law PLLC*, 850 S.E.2d 708, 714 (W. Va. 2020).

The first two elements are straightforward.  The West Virginia Supreme Court has said that where, as here, "the plaintiff directly hired the attorney, there is no question" about his employment.  *Calvert*, 619 S.E.2d at 203.  As for the duty owed, attorneys must "exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances."  Syl. Pt. 1, *Keister v. Talbott*, 391 S.E.2d 895 (W. Va. 1990).

That leaves causation.  The Plaintiff must also prove that his "damages are the direct and proximate result of [the attorney's] negligence."  *Id.* at 899; *see also Calvert*, 619 S.E.2d at 208 ("Without the requisite causal connection between an attorney's malpractice and a loss to the client, a malpractice case simply cannot go forward.").

The test for direct causation is simple enough.  Courts ask whether the plaintiff "would have suffered [his] damages" "but for the negligence of the lawyer."  *Calvert*, 619 S.E.2d at 208. Put differently, if the lawyer had not acted negligently, would the plaintiff's damage have been avoided?  *See Keister*, 391 S.E.2d at 900.  If so, the defendant's negligence is a direct, or "but-for," cause of the plaintiff's damages.  *Calvert*, 619 S.E.2d at 208.

Proximate causation is a little more nuanced.  Unlike direct causation, which focuses on whether the defendant's negligent act led to the plaintiff's damages, proximate causation asks

whether the plaintiff's "damages naturally flowed from" the defendant's negligence.   *Rubin Res., Inc. v. Morris*, 787 S.E.2d 641, 647 (W. Va. 2016).   In other words, a defendant's negligent act is a proximate cause if, and only if, the negligent act was "reasonably expected to produce" the plaintiff's damages.   Syl. Pt. 11, *Anderson v. Moulder*, 394 S.E.2d 61 (W. Va. 1990).

### 2.   *West Virginia Lawyer Disciplinary Procedures*

Legal malpractice claims are characterized by their "suit within a suit" nature.   *McGuire v. Fitzsimmons*, 475 S.E.2d 132, 135 (W. Va. 1996).   That is, the Court must look to "the underlying suit for which [Plaintiff] originally sought legal services" to resolve his current malpractice claim.   *Id.*   Here, Plaintiff's claim arises from his West Virginia disbarment proceedings, so a brief overview of West Virginia's reciprocal disciplinary rules and procedures is in order.

Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure governs reciprocal disciplinary proceedings.   *Law. Disciplinary Bd. v. Calhoun*, 655 S.E.2d 787, 791 (W. Va. 2007) (per curiam).   Rule 3.20(a) provides that "[a] final adjudication in another jurisdiction . . . of misconduct constituting grounds for discipline of a lawyer . . . shall . . . conclusively establish such conduct."   The West Virginia Supreme Court has given this rule its literal meaning: "a final adjudication of professional misconduct in another jurisdiction *conclusively establishes the fact of such misconduct* for purposes of reciprocal disciplinary proceedings."   Syl. Pt. 1, *Law. Disciplinary Bd. v. Post*, 631 S.E.2d 921 (W. Va. 2006) (emphasis added).   Thus, once an attorney's misconduct is conclusively established in a foreign jurisdiction, Rule 3.20 "require[s] the imposition of the identical sanction imposed by the foreign jurisdiction."   *Id.* at 926.

Contradictory as it may seem, though, lawyers retain a limited right to challenge their conclusively established misconduct and thereby avoid reciprocal discipline. *Comm. on Legal Ethics of the W. Va. State Bar v. Battistelli*, 405 S.E.2d 242, 245 (W. Va. 1991). Lawyers do so by requesting a formal hearing before an HPS. W. Va. R. Law. Disc. P. 3.20(d) ("If the lawyer intends to challenge the validity of the disciplinary order entered in the foreign jurisdiction with a disciplinary proceeding, the lawyer must request a formal hearing."). At the hearing, lawyers can present evidence that attacks the validity of their foreign disciplinary sanction. *See* W. Va. R. Law. Disc. P. 3.20(e). The HPS, after hearing proffered evidence, then refers the matter to the West Virginia Supreme Court for a final disposition. *Id.* Included in the HPS's referral is a recommended disposition, which the West Virginia Supreme Court considers before making the ultimate disciplinary decision. *Law. Disciplinary Bd. v. Doheny*, 875 S.E.2d 191, 195 (W. Va. 2022). Importantly, however, the HPS is required to recommend—and the West Virginia Supreme Court is required to impose—"the same discipline [as that] imposed by the foreign jurisdiction" unless the lawyer establishes that one of four narrow exceptions applies. W. Va. R. Law. Disc. P. 3.20(e). These exceptions are limited to the following:

> (1) the procedure followed in the foreign jurisdiction did not comport with the requirements of due process of law; (2) the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Supreme Court of Appeals cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; (3) the imposition by the Supreme Court of Appeals of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals.

*Id.*

10

B. Analysis

The Magistrate Judge recommended the Court dismiss the Amended Complaint because Plaintiff failed to allege Defendants were a direct, but-for cause of his West Virginia disbarment.[5] (ECF No. 30 at 18–20.)   Specifically, the Magistrate Judge found that Plaintiff's New York misconduct caused his West Virginia disbarment, and that Defendants could not have prevented it.   (*Id.*)   Plaintiff lodges two principal objections.[6]   First, he argues that the connection between his New York misconduct and his West Virginia disbarment is too attenuated to satisfy the but-for causation standard.   (ECF No. 32 at 15–16.)   Second, Plaintiff claims that, even if his New York misconduct was a but-for cause of his West Virginia disbarment, Defendants are, too, because they failed to take certain actions that would have saved his West Virginia law license.   (*Id.* at 17–24.) Neither objection holds water.

1. *Plaintiff's New York misconduct was a direct, but-for cause of his West Virginia disbarment*

a.

A straightforward application of Rule 3.20 confirms that Plaintiff's West Virginia disbarment was caused by his misconduct in New York, not by any act or omission by Defendants. Under Rule 3.20(a), "[a] final adjudication in another jurisdiction . . . of misconduct constituting grounds for discipline of a lawyer . . . shall . . . conclusively establish such conduct."   The New York courts found that Plaintiff committed "numerous egregious and outrageous acts of

---

[5] The Magistrate Judge also questioned whether Plaintiff adequately alleged that Defendants breached their duty but chose not to address that issue, instead finding the causation element dispositive.   (ECF No. 30 at 11–12.)   This Court follows suit and declines to consider whether Plaintiff alleged sufficient facts regarding breach.

[6] At the end of his objections, Plaintiff also presents the Court with a smorgasbord of other objections that are, at best, tangential to the causation issue.   (*See, e.g.*, ECF No. 32 at 24–25 (discussing *Rooker-Feldman* abstention and work-product doctrine).)   So, to the extent those objections warrant any consideration, they are hereby **OVERRULED**.

[professional] misconduct" "over the course of a four-year period." *Matter of Zappin*, 73 N.Y.S.3d at 187.   This included perjuring himself, introducing false evidence at trial, flouting the directives of multiple judges, and filing a false police report, to name just a few.   *Id.*   The West Virginia Supreme Court, in accordance with the West Virginia Rules of Lawyer Disciplinary Procedure and its own precedent, considered those findings conclusively established for Plaintiff's reciprocal disciplinary proceedings.   *Zappin*, 2021 WL 595869, at *6.   Based on those findings— and those findings alone—the Court disbarred Plaintiff.   *Id.*   So, there is but one conclusion here: Plaintiff's New York misconduct caused his West Virginia disbarment.

b.

Plaintiff disagrees.   In support, he relies solely on one of his prior cases from the Southern District of New York, where he challenged the constitutionality of New York's policy of using collateral estoppel in attorney disciplinary proceedings.   *Zappin v. Collazo*, 19 Civ. 3781, 2020 WL 5646496 (S.D.N.Y. Sept. 22, 2020).   The district court dismissed that case on standing grounds because Plaintiff's alleged injury—his then-impending West Virginia disciplinary proceedings—arose from a series of independent actions of a third party (the ODC) that were not fairly traceable to the New York Defendants.   *Id.* at *7.   Because of that, the *Collazo* court found Plaintiff's injury was too attenuated to the challenged policy to satisfy Article III's standing requirements.   *Id.*   Plaintiff now claims that, under *Collazo*, his New York misconduct cannot have caused his West Virginia disbarment because it was "too attenuated."   (ECF No. 32 at 15– 16.)

Plaintiff's reliance on *Collazo* is misplaced for two reasons.   First, *Collazo* does not bind this Court.   *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 538 n.1 (4th Cir. 2017) ("[A] decision

of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011))).

Second, Plaintiff erroneously tries to graft Article III standing principles onto West Virginia tort law.   "A plaintiff has Article III standing if she (1) suffers an injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed if the court rules in her favor."  *DiCocco v. Garland*, 52 F.4th 588, 591 (4th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).   This traceability requirement is admittedly "relatively modest," *Bennett v. Spear*, 520 U.S. 154, 171 (1997), but there are some basic requirements, *see California v. Texas*, 141 S. Ct. 2104, 2113 (2021).   As relevant here, the plaintiff's "injury must be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *DiCocco*, 52 F.4th at 592 (alterations in original) (quoting *Lujan*, 504 U.S. at 560).   That was the point in *Collazo*—Plaintiff's West Virginia disciplinary proceedings were brought about by the ODC, not the New York Defendants that Plaintiff had sued.   2020 WL 5646496, at *7 (detailing the many intervening actions and decisions that led to Plaintiff's West Virginia reciprocal disciplinary proceedings).   That fact rendered the causal connection between Plaintiff's injury and the challenged policy too attenuated to confer Article III standing.   *Id.*   But the *Collazo* court never said the casual connection was *nonexistent*—simply that it was *too attenuated* for standing purposes.   *Id.*   *Collazo* is thus irrelevant.

Attenuation has nothing to do with the but-for causation analysis here; it is sufficient that Plaintiff's West Virginia disbarment would not have happened but for his New York misconduct and subsequent disbarment.   *See Calvert*, 619 S.E.2d at 208.   That much is obvious.

> 2.   *Defendants could not have prevented Plaintiff's West Virginia disbarment because he was collaterally estopped from disputing his New York misconduct*

Nevertheless, Plaintiff persists.   He next argues that, even if his New York misconduct was a but-for cause of his West Virginia disbarment, Defendants were, too.   (ECF No. 32 at 17–24.)   Specifically, Plaintiff claims that his West Virginia disbarment was not an "automatic and [] foregone conclusion," and that Defendants could have prevented his disbarment had they made certain arguments.   (*Id.*)   More to the point, Plaintiff contends that Defendants should have contested whether he (1) actually committed attorney misconduct in New York and (2) had an opportunity, consistent with due process, to challenge the New York courts' findings that he did. (*Id.*)   Had Defendants done so, Plaintiff says, the HPS would not have recommended, and West Virginia Supreme Court would not have imposed, reciprocal discipline.   (*Id.*)   Not so.   Even if Defendants had argued those points,[7] it would have been to no avail because Plaintiff was collaterally estopped from challenging the New York courts' misconduct findings.

Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."   *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).   The doctrine "protect[s] against the expense and vexation attending multiple lawsuits, conserv[es]

---

[7] Again, the Court assumes without deciding that Plaintiff adequately alleged breach, notwithstanding the Amended Complaint describing Defendants doing their level best to advocate for Plaintiff.   (ECF No. 16 at 35–36.)

judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (internal quotation marks omitted) (first alteration in original) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

This Court, like many others before it, has already found that Plaintiff cannot "relitigat[e] any factual or legal issues that have already been determined" by the New York courts. *Ramey*, 2023 WL 1469995, at * 12 (collecting cases that applied collateral estoppel against Plaintiff). However, that is precisely what Plaintiff wishes Defendants would have done before the HPS. After all, Plaintiff now claims that he would have avoided disbarment had Defendants argued that he (1) never committed any misconduct, or (2) lacked a fair opportunity to contest the New York courts' findings. But the New York courts had already rejected those arguments. *Id.* Thus, even if Defendants had made those very arguments, it would not have changed a thing. They could have filed more eloquent and zealously insistent briefs and pounded their chests to the point of hematoma before the HPS—the result would be the same.

The Court thus concludes that Defendants were not a but-for cause of Plaintiff's West Virginia disbarment. Plaintiff's Amended Complaint fails to state a claim and must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections to the PF&R, **ADOPTS** the PF&R in its entirety, and **DISMISSES** this action **WITH PREJUDICE**. The Court further **ENJOINS** Plaintiff from further filings in this Court against these Defendants or their counsel without first seeking prior approval by this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        August 30, 2023

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

16